UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------ X
                                       :

**MICHAEL D'AGOSTINO**,                    :

                                       :

                 Plaintiff,       :    **MEMORANDUM DECISION AND ORDER**

                                       :

             – against –            :    25-CV-2887 (AMD) (VMS)

                                       :

**MIDLAND CREDIT MANAGEMENT, INC.**,    :

                                       :

                 Defendants.       :

                                       :

------------------------------------------------------------------ X

**ANN M. DONNELLY**, United States District Judge:

The plaintiff brings this action against Midland Credit Management, Inc. ("MCM"), alleging violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, as well as state law claims for violations of New York General Business Law § 349 ("Section 349") and negligence *per se*. (ECF No. 1-3 ¶¶ 59–99.) Before the Court are the plaintiff's motion to remand this case to state court pursuant to 28 U.S.C. § 1447(c) (ECF No. 16), and the defendant's motion to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) (ECF No. 15). As explained below, the plaintiff's motion to remand is granted, and the defendant's motion to dismiss is denied as moot.

## BACKGROUND

The plaintiff's claims relate to a personal financial account that he maintained with WebBank. (ECF No. 1-3 ¶ 21.) He concedes that he fell behind on payments he owed on the account. (*Id.* ¶ 22.) On August 28, 2024, the plaintiff received a letter from MCM, which stated that his "account has been charged-off and sold," but "[a]s the owner of this obligation," MCM

had "the legal right to seek repayment" of $734.21.  (ECF No. 15-3 at 3.)[1]  The letter identified

WebBank as the "original creditor" and MCM as the "current creditor" and "sole owner" of the

debt.  (*Id.* at 4.)  According to the plaintiff, however, there was no "true sale" of his account from

WebBank to MCM, because WebBank retained "control over the accounts," "audit rights over

MCM," "the right to require MCM to provide regular reporting," and the right to recall,

repurchase or exchange the account.  (ECF No. 1-3 ¶¶ 32–36.)  This means, the plaintiff says,

that he "was never indebted to MCM for $734.21, or any other amount."  (*Id.* ¶ 38.)

The plaintiff filed this action in state court on January 14, 2023 and amended his

complaint on April 23, 2025.  (ECF No. 1 ¶¶ 1–3.)  He seeks "actual, treble, exemplary, punitive,

and statutory damages of $50,000.00, attorneys' fees and costs, pre- and post-judgment interest,

"[a] determination that MCM has committed the violations of law alleged," and "such other and

further relief as this Court deems just and proper."  (ECF No. 1-3 at 13.)  On April 23, 2025, the

defendant removed the action to federal court pursuant to 28 U.S. § 1441.  (*See* ECF No. 1.)  It

argues that the Court has federal question jurisdiction over the plaintiff's FDCPA claims under

28 U.S.C. § 1331 and supplemental jurisdiction over the plaintiff's state law claims under 28

U.S.C. § 1367.  (*Id.* ¶ 8.)

Now, the plaintiff moves to remand this case to state court pursuant to 28 U.S.C.

§ 1447(c), claiming that he does not have Article III standing to prosecute his case in federal

court.  (*See* ECF No. 16.)  The defendant opposes remand and argues that the plaintiff has

standing.  (*See* ECF No. 18.)  The defendant moves to dismiss the complaint under Federal Rule

of Civil Procedure 12(b)(6) for failure to state a claim.  (*See* ECF No. 17.)

---

[1] The Court considers the letter in deciding the motion to remand, because "[i]t is well-established that a court may rely on documents outside the pleadings when deciding whether it has subject matter jurisdiction." *Graham v. Select Portfolio Servicing, Inc.*, 156 F. Supp. 3d 491, 502 n.1 (S.D.N.Y. 2016).

## LEGAL STANDARD

Under 28 U.S.C. § 1441, a defendant may remove "any civil action brought in a State court of which the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441(a). "Removal jurisdiction must be strictly construed, both because the federal courts are courts of limited jurisdiction and because removal of a case implicates significant federalism concerns." *Williams v. Connell*, No. 12-CV-3593, 2017 WL 2829686, at *2 (E.D.N.Y. June 29, 2017) (quoting *In re NASDAQ Mkt. Makers Antitrust Litig.*, 929 F. Supp. 174, 178 (S.D.N.Y. 1996) (citation omitted)). Following removal, a case must be remanded "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction." 28 U.S.C. § 1447(c). On a motion to remand, "the defendant 'bears the burden of demonstrating the propriety of removal.'" *Adam Devs. Enters., Inc. v. Arizon Structures Worldwide, LLC*, No. 13-CV-261, 2013 WL 5532752, at *2 (E.D.N.Y. Sep. 30, 2013) (quoting *Cal. Pub. Emps.' Ret. Sys. v. WorldCom, Inc.*, 368 F.3d 86, 100 (2d Cir. 2004)).

Standing is an element of the Court's subject matter jurisdiction. *United States v. Hays*, 515 U.S. 737, 742 (1995) ("The federal courts are under an independent obligation to examine their own jurisdiction, and standing is perhaps the most important of [the jurisdictional] doctrines." (citation modified)). Article III of the United States Constitution "confines the federal judicial power to the resolution of 'Cases' and 'Controversies.'" *TransUnion LLC v. Ramirez*, 594 U.S. 413, 414 (2021). "For there to be a case or controversy under Article III, the plaintiff must have a 'personal stake' in the case — in other words, standing." *Id.* (citing *Raines v. Byrd*, 521 U.S. 811, 819 (1997)). At all stages of litigation, "the party invoking federal jurisdiction bears the burden of establishing the[ ] elements" of Article III standing. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1998) (citations omitted).

3

"[T]o establish standing, a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion*, 594 U.S. at 423 (citing *Lujan*, 504 U.S. at 560–61); *see also Spokeo, Inc. v. Robbins*, 578 U.S. 330, 338 (2016) ("The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." (citations omitted)); *Calcano v. Swarovski N. Am. Ltd.*, 36 F.4th 68, 74–75 (2d Cir. 2022) (discussing the standard for establishing standing). "[S]imply alleging a statutory violation does not demonstrate a concrete injury." *Desmarattes v. Equifax*, No. 22-CV-3330, 2023 WL 8473362, at *9 (E.D.N.Y. Dec. 7, 2023) (citing *TransUnion*, 594 U.S. 426–27). Rather, the plaintiff must plausibly allege that the statutory violation "resulted in a concrete injury, *i.e.*, a 'physical, monetary, or cognizable intangible harm[ ] traditionally recognized as providing a basis for a lawsuit in American courts.'" *Id.* (quoting *Harty v. W. Point Realty, Inc.*, 28 F.4th 425, 442–43 (2d Cir. 2022)).

## DISCUSSION

Before the Court can consider the defendant's motion to dismiss, it must evaluate whether the plaintiff has Article III standing to sue. *See Thorne v. Boston Mkt. Corp.*, 469 F. Supp. 3d 130, 135 (S.D.N.Y. 2020) ("For the Court to adjudicate this matter, Plaintiff must first establish that he has standing pursuant to Article III of the Constitution."). In this case, the complaint states in a conclusory manner that the plaintiff suffered injuries — damage to his credit score and creditworthiness, "expenses related to credit monitoring services," the cost of a higher interest rate on a lease, additional money down to secure financing, a lost opportunity for unsecured credit from Bank of America, N.A., stress, aggravation, fear, lost time, and the cost of

4

hiring counsel. (ECF No. 1-3 ¶¶ 43–48.) However, the complaint does not sufficiently allege that he suffered "physical, monetary, or cognizable intangible harm" because of the defendant's specific conduct. *Harty*, 28 F.4th at 442–43 (quoting *TransUnion*, 594 U.S. at 427). Therefore, the plaintiff does not have standing, and the Court lacks subject-matter jurisdiction over the plaintiff's claims.

## I.   Injury in Fact

Some of the plaintiff's claimed injuries are not "concrete, particularized" injuries, and thus do not satisfy the first element of standing. *TransUnion*, 594 U.S. at 423. The plaintiff alleges that his credit score and creditworthiness were "negatively impacted" because of MCM's actions. (ECF No. 1-3 ¶¶ 43–44.) Courts have found that similarly vague and conclusory allegations of credit rating injuries are not "concrete, particularized" harms, absent allegations that the plaintiff lost a specific credit opportunity or otherwise suffered actual financial harm. *TransUnion*, 594 U.S. at 423; *Maddox v. Bank of N.Y. Mellon Trust Co.*, 19 F.4th 58, 65 (2d Cir. 2021) (holding that adverse effects to a credit score cannot confer standing where "it is not alleged that this purported risk [to financing] materialized"); *Gross v. TransUnion, LLC*, 607 F. Supp. 3d 269, 273 (E.D.N.Y. 2022) (conclusory allegations of "injury to [the plaintiff's] credit worthiness" and "increased difficulty obtaining credit" insufficient, "[w]ithout more," for Article III standing); *Lewis v. Experian Info. Sols., Inc.*, No. 23-CV-857, 2024 WL 1308705, at *5 (E.D.N.Y. Mar. 27, 2024) (allegations including "past and future damage to [the plaintiff's] credit worthiness" insufficient to establish standing).

The plaintiff also alleges that he suffered "stress, aggravation, fear, and lost time." (ECF No. 1-3 ¶ 48.) But "[a] perfunctory allegation of emotional distress . . . is insufficient to plausibly allege constitutional standing." *Maddox*, 19 F.4th at 66; *Gross*, 607 F. Supp. 3d at 273

("Is TransUnion's reporting error weighing on plaintiff so heavily that he has difficulty sleeping or suffers from anxiety attacks?"); *Zlotnick v. Equifax Info. Servs., LLC*, 583 F. Supp. 3d 387, 391–92 (E.D.N.Y. 2022) (conclusory allegations of "mental and emotional pain, anguish, humiliation, and embarrassment of credit denial" insufficient for Article III standing, because "such claims must be supported by sufficient allegations"); *Lewis*, 2024 WL 1308705, at *5–6 (finding that "conclusory" claims that the plaintiff experienced, such as "anger, anxiety, emotional distress, fear, frustration, upset, humiliation, embarrassment, amongst other negative emotions" did not establish standing).  Therefore, the plaintiff's emotional claims cannot support standing, either.

In addition, the plaintiff maintains that he had to pay for credit monitoring services and hire an attorney.  (ECF No. 1-3 ¶¶ 45, 48.)  Efforts to mitigate a sufficient risk of harm can qualify as concrete injuries.  *See Cavazzini v. MRS Assocs.*, 574 F. Supp. 3d 134, 143–45 (E.D.N.Y. 2021) (citations omitted) ("Courts have found wasted time to support standing when the wasted time is inextricably bound up in a cognizable injury.").  But where the underlying harm does not itself support standing, efforts to mitigate that harm do not create standing.  *See id*; *Pollak v. Portfolio Recovery Assocs., LLC.*, No. 21-CV-6738, 2022 WL 580946, at *1 (E.D.N.Y. Feb. 24, 2022) ("Plaintiff "has not alleged any underlying harm or risk of harm that supports treating the cost of his mitigation efforts as a concrete injury."); *Wolkenfeld v. Portfolio Recovery Assocs., LLC*, No. 22-CV-1156, 2022 WL 1124828, at *2 (E.D.N.Y. Apr. 14, 2022) (concluding that "spending time and money because of mere concern and confusion" is not a "sufficiently concrete" injury unless "inextricably bound up in a cognizable injury, such as where a plaintiff faces *a sufficient risk of harm, and then* spends time, money, and effort mitigating that risk" (citation modified)).  As explained above, a decrease in credit score is not a concrete injury.

Accordingly, the time and money the plaintiff spent to address credit-related concerns do not support standing.

## II. Traceability

The plaintiff's remaining injuries satisfy standing's injury-in-fact element, but they do not confer standing because the plaintiff has not provided any basis for the Court to conclude that the defendant caused the harm. *See TransUnion*, 594 U.S. at 423. The plaintiff alleges that he "received a higher interest rate on a lease and was required to put additional money down in order to secure financing," and that Bank of America, N.A. denied his request for unsecured credit. (ECF No. 1-3 ¶¶ 46–47.) Claims of negative impact on the plaintiff's "creditworthiness" are concrete financial harms, and are thus injuries in fact. *See Enmanuel v. First Premier Bank*, No. 23-CV-198, 2023 WL 3020591, at *3 (E.D.N.Y. Apr. 20, 2023) ("The Supreme Court in TransUnion specifically identified the dissemination of a misleading credit report or 'a denial of credit' as examples of events that would constitute a concrete harm." (citing *TransUnion*, 594 U.S. at 437)); *Gross*, 607 F. Supp. 3d at 273 (citing a "specific lost credit opportunity" as an example of a harm that would support standing to sue). But to establish standing, the plaintiff must still show that these injuries are "fairly traceable to the challenged conduct of the defendant." *Spokeo*, 578 U.S. at 338; *see also TransUnion*, 594 U.S. at 423 ("[A] plaintiff must show . . . that the injury was likely caused by the defendant . . . .").

The plaintiff concedes that he fell behind on payments to a creditor. (ECF No. 1-3 ¶ 22.) He argues that he owed money to WebBank, not MCM, but he does not explain how MCM's allegedly wrongful claim to the debt caused his injuries. It is not plausible to claim that listing MCM instead of WebBank on his credit report caused the plaintiff's landlord to charge him a higher interest rate or motivated Bank of America to deny him unsecured credit. "[T]here is no

reason why a prospective lender or credit provider would care one whit whether plaintiff had defaulted on a [MCM debt] instead of a [WebBank debt]." *Gross*, 607 F. Supp. 3d at 273–74. Because the plaintiff has not linked the defendant's actions to the alleged harm, he has not established Article III standing. *See id.*; *In re FDCPA Mailing Vendor Cases*, 551 F. Supp. 3d 57, 66 (E.D.N.Y. 2021) (dismissing complaints that alleged that debt collection notices misidentified the plaintiffs' original creditors, because the plaintiffs "fail[ed] to show a concrete injury in fact from such a violation").

## CONCLUSION

For these reasons, the plaintiff's motion to remand is granted. The defendant's motion to dismiss is denied as moot. The case is remanded to the Civil Court of the City of New York, Queens County.

**SO ORDERED.**

s/Ann M. Donnelly

ANN M. DONNELLY
United States District Judge

Dated: Brooklyn, New York
    June 2, 2026